AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
NOV - 1 2019
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One iPhone 8 Plus Cellular Phone<br>IMEI: 353012099045757 | Case No.  **19MJ4853** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(2)(B)(ii), (iii) | Bringing in Aliens Without Presentation and Bringing in Aliens for Financial Gain |

The application is based on these facts:

See attached Affidavit of Officer Carlo E. Nazareno, U.S. Customs and Border Protection

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Off. Carlo Nazareno, U.S. Customs and Border Protection
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/1/19

*Judge's signature*

City and state: San Diego, CA

Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 8, United States Code, Sections 1324(a)(2)(B)(ii) and (iii), Bringing in Aliens Without Presentation and Bringing in Aliens for Financial Gain, is an iPhone 8 Plus cellular phone, IMEI: 353012099045757 (the "Target Device").

The Target Device is currently in the possession of the United States Customs and Border Protection as evidence and being held at 9495 Customshouse Plaza, San Diego, CA 92154.

# **ATTACHMENT B**

Authorization to search Target Device described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below. The seizure and search of the Target Device shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats, and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 17, 2019 to September 17, 2019:

a. tending to identify attempts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the smuggling of aliens from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the smuggling of aliens from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the smuggling aliens from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, cellular/mobile telephone(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 8, United States Code, Sections 1324(a)(2)(B)(ii) and (iii), Bringing in Aliens Without Presentation and Bringing in Aliens for Financial Gain.

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Carlo E. Nazareno, having been duly sworn, declare and state as follows:

## I

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search one iPhone 8 Plus Cellular Phone, IMEI: 353012099045757 ("Target Device"), and seize evidence of crimes, specifically violations of Bringing in Aliens Without Presentation in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii), and Bringing in Aliens for Financial Gain in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii) (the "Target Offenses").

2. Target Device was seized from the vehicle of Defendant Paoletta LEDESMA at the time of her arrest for the Target Offenses on September 17, 2019, at the San Ysidro, California Port of Entry. The Target Device is currently in the possession of United States Customs and Border Protection ("CBP") as evidence and being held in CBP custody at 9495 Customshouse Plaza, San Diego, CA 92154.

3. This search of the Target Device supports an investigation and prosecution of LEDESMA for the Target Offenses. Based on the information below, there is probable cause to believe that a search of the Target Device, as described in Attachment A, will produce evidence of the Target Offenses, as described in Attachment B.

4. The following is based upon my experience and training, investigation, and consultation with other law enforcement agents and officers experienced in narcotics and immigration violations, including the Target Offenses. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because I make this affidavit for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all of the information known by me or other federal agents regarding this investigation, but only sets forth those facts believed to be necessary to establish probable cause. Dates and times are approximate, and refer to Pacific Standard Time (PST) unless otherwise specified.

## II

## **AFFIANT'S EXPERIENCE AND TRAINING**

5. I am an Officer with the United States Customs and Border Protection (CBP) within the Department of Homeland Security. I have been a CBP Officer since June 18, 2007 having completed the CBP Officer academy at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. As a result of my training and experience as a CBP Officer, I am familiar with federal criminal and immigration laws. My primary duties have been the enforcement of federal immigration and customs laws. As part of this training, I attended criminal investigation training that included course studies in, among other things, criminal law, constitutional law, search and seizures, and courtroom procedure.

6. As a CBP Officer, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants. As an Officer with Customs and Border Protection, my responsibilities include the investigation of possible violations of Immigration and Nationality laws (Title 8, United States Code), including alien smuggling in violation of Title 8, United States Code, Section 1324, and related offenses.

7. My assignment includes investigations related to unlawful aliens and alien smuggling. In the course of my duties, I have worked as the case agent, directing specific alien smuggling and illegal entry investigations. I have worked as an officer at the San Ysidro, California Port of Entry (POE), the Otay Mesa, California POE, and Tecate, California POE.

8. During my assignments, I have interviewed defendants and witnesses relative to their illegal entry and alien smuggling. Through my observations and these interviews, I have gained a working knowledge and insight into the normal operational habits of

2

Case 3:19-mj-04853-BLM   Document 1   Filed 11/01/19   PageID.6   Page 6 of 13

unlawful aliens and alien smugglers, with particular emphasis on those who attempt to illegally enter or smuggle unlawful aliens into the United States from Mexico.

9. Through the course of my training, investigations, work experience, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals, and they do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. As a part of the San Ysidro Criminal Enforcement Unit (CEU), I have seen numerous telephones being used by load drivers to communicate with smugglers. Typically, load drivers transporting aliens within the United States are in telephonic contact with co-conspirators immediately prior to and following the entry of unlawful aliens into a load vehicle, at which time they receive instructions on where and when to pick up the unlawful aliens and where to deliver them.

10. Based upon my training and experience as a CBP Enforcement Officer, and consultations with law enforcement officers, I submit the following:

    a. Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, email, Internet, social media applications, and text and voice messages.

    b. Alien smugglers will use cellular telephones because they are able to monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations within the United States.

    d. Alien smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e. Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity, including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints or Ports of Entry within the United States.

    f. Alien smugglers will often use cellular phones and smart devices to guide illegal aliens who are crossing into the United States, providing them instructions as to where to go and what to do during a smuggling event. This

is often done from over watch positions on high ground in Mexico or at the border fence. This allows smugglers to remotely control the actions of the smuggled aliens, while insulating themselves from criminal prosecution.

g. Conspiracies involving alien smuggling often generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, and phone numbers of co-conspirators.

11. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

12. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated herein are shared by them. Based upon my training and experience as a CBP Enforcement Officer, and consultations with law enforcement officers experienced in smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones often contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training and education, I have learned that searches of cellular/mobile telephones associated with smuggling investigations yield evidence:

a. tending to identify attempts to smuggle aliens from Mexico into the United States;

4

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the smuggling of aliens from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the smuggling of aliens from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the smuggling aliens from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, cellular/mobile telephone(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## III

### STATEMENT OF PROBABLE CAUSE

13. On September 17, 2019 at approximately 12:30 p.m., LEDESMA applied for admission to enter the United States at the San Ysidro, California Port of Entry from Tijuana, Mexico via the Secure Electronic Network for Travelers Rapid Inspection (SENTRI) vehicle primary lanes. LEDESMA was the driver, registered owner, and sole visible occupant of a 2001 Toyota Echo when she presented herself for inspection upon a Customs and Border Protection Officer ("CBPO"). LEDESMA presented a SENTRI card bearing her name as her entry documents, and stated that she was traveling to San Diego, California. LEDESMA stated that she had nothing to declare from Mexico. While conducting an inspection of the vehicle, the CBPO inspected the trunk of the car and discovered one male concealed inside. The CBPO requested assistance and placed LEDESMA in handcuffs. Responding officers escorted the Defendant to the security office for further inspection. The vehicle was driven to the secondary lot for further inspection.

14. In secondary, CBP Officers assisted in removing one male concealed inside the trunk area of the vehicle. The male was later identified as Felix Cabanas who was determined to be a citizen of Mexico without legal documents to enter the United States. During a video-recorded interview, Cabanas admitted he is a citizen of Mexico by birth in Mexico and does not possess any legal documentation to enter, pass or reside in the United States. Cabanas admitted that his sister arranged for him to be smuggled into the United States for $12,500 USD. Cabanas stated that he was going to Los Angeles, California.

15. Target Device was seized from the vehicle from a ledge on the dashboard next to the driver's seat of the vehicle. LEDESMA claimed ownership of the device, provided agents with its passcode, and gave consent to search Target Device. However, attempts to download Defendant's cell phone at the time of arrest were unsuccessful.

16. LEDESMA was advised of her *Miranda* Rights and agreed to answer questions without an attorney present. LEDESMA admitted knowledge of smuggling something illegal concealed in the vehicle she was driving. LEDESMA thought she was smuggling a large amount of gold into the United States. LEDESMA stated she was going to the 7-11 in San Ysidro, California after a successful entry into the United States. LEDESMA stated she was to be paid $1,000 US dollars for the smuggling act. LEDESMA stated her boyfriend's sister introduced her to a man named "JAYY," who coordinated the smuggling endeavor. LEDESMA explained that JAYY told her she would be smuggling gold made in Mexico into the United States to be sold. LESEDMA admitted that she had smuggled what she believed to be gold for JAYY approximately two weeks prior. LESESMA stated that she communicated with JAYY by phone on the Target Device; LEDESMA further stated that she communicated with JAYY on Facebook and the Facebook messages are on the Target Device, although LEDESMA later stated that JAYY had her erase her Facebook messages.

17. On September 18, 2019, Magistrate Judge William V. Gallo found probable cause to charge Defendant with a one count of Bringing in Aliens Without Presentation in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii). *United States v.*

*Ledesma*, Case No. 19-CR-04113-JAH, ECF No. 1 (S.D. Cal.) On October 25, 2019, a federal grand jury returned a two-count indictment charging LEDESMA with one count of Bringing in Aliens Without Presentation in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii), and one count of Bringing in Aliens for Financial Gain in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii). *United States v. Ledesma*, Case No. 19-CR-4298-JAH, ECF No. 1 (S.D. Cal.).

18. Based on my experience investigating alien smugglers, LEDESMA may have used the Target Device to coordinate with other co-conspirators regarding the purpose of her travel to Tijuana on or about September 17, 2019, when they would bring the Material Witness to the vehicle, the location of the vehicle, and where LEDESMA would go once the Material Witness was in the vehicle's trunk.

19. Based on my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I further believe that information relevant to the alien smuggling activities and her co-conspirators, such as recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites, pictures, and other digital information may be stored in the memory of the Target Device and may identify other persons involved in alien smuggling activities.

20. Alien smuggling conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual smuggling of aliens into the United States. Co-conspirators communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States. Given this, I request permission to search the Target Device for items listed in Attachment B beginning on June 17, 2019, up to and including September 17, 2019.

//
//
//

7

# III

# METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the Target Device and its memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

8

1  review, and, consequently, may take weeks or months. The personnel conducting the
2  identification and extraction of data will complete the analysis within ninety (90) days of
3  the date the warrant is signed, absent further application to this court.

## IV
## CONCLUSION

24. Based on all of the facts and circumstances described above, my training and experience, and consultations with other law enforcement officers, there is probable cause to conclude that LEDESMA utilized the Target Device to facilitate the smuggling of unlawful aliens in violation of Title 8, United States Code, Section 1324.

25. Because the Target Device was promptly seized during the investigation of LEDESMA's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by LEDESMA continues to exist on the Target Device. As stated above, the date range for this search is from June 17, 2019 through September 17, 2019.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

26. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I believe that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Carlo E. Nazareno
CBP Officer
Customs and Border Protection

Sworn to and subscribed before me this __1st__ day of ~~October~~ Nov, 2019.

_____
HON. BARBARA L. MAJOR
UNITED STATES MAGISTRATE JUDGE

10